William Litvak (SBN 90533)
Eric P. Markus (SBN 281971)
Matthew Ames (SBN 288017)
DAPEER, ROSENBLIT & LITVAK, LLP
11500 W. Olympic Blvd., Suite 550
Los Angeles, CA 90064
Telephone: (310) 477-5575
Facsimile:  (310) 477-7090

Attorneys for Plaintiffs,
MORRIS FLANCBAUM and
SUSAN RIZZUTO

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS FLANCBAUM, an individual; SUSAN RIZZUTO, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> THE TYSON GROUP, INC., a California corporation; and, DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES** <br><br> **DEMAND FOR JURY TRIAL** |

### NATURE OF THE COMPLAINT

1. This is an action brought to enforce a Convertible Promissory Note ("Note") between Plaintiffs MORRIS FLANCBAUM and SUSAN RIZZUTO (collectively, Plaintiffs), on the one hand, and THE TYSON GROUP, INC. ("Tyson" or "Defendant"), on the other hand. Defendant failed to repay substantial sums due and owing under the Note, are in default, and presently owe Plaintiffs more than $650,000.

//

//

//

**COMPLAINT**

1

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on the Court by 28 U.S.C. § 1332(a)(1) because the Parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in El Segundo, California.

## THE PARTIES

4. At all times relevant hereto, Plaintiffs MORRIS FLANCBAUM and SUSAN RIZZUTO (collectively, "Plaintiffs") were, and now are, individuals over 18 years of age and residents of Palm Beach County, State of Florida.

5. At all times relevant hereto, Defendant THE TYSON GROUP, INC. ("Defendant" or "Tyson") is and has been a corporation organized and existing under the laws of the State of California. At all relevant times prior to February 7, 2022, Defendant had its principal place of business at 1209 East El Segundo Boulevard, El Segundo, California 90245. Plaintiffs are informed and believe and based thereon allege that as of February 7, 2022, Defendant's principal place of business is 2445 Nevada Avenue N, Suite 400, Golden Valley, Minnesota 55427.

6. The true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names. When the true names and capacities of said fictitiously named defendants have been ascertained, Plaintiffs will ask leave of the Court to amend this Complaint to insert in lieu of such fictitious names the true names and capacities of said defendants. Plaintiffs are informed and believe and based thereon allege that DOES 1 through 10, and each of them, were in some manner responsible for the acts alleged herein.

**COMPLAINT**

7. Plaintiffs are informed and believe and based thereon allege that at all times relevant hereto, Defendants named in the caption of this Complaint, which is incorporated herein by reference, and each of them, acted individually for himself, herself, itself, or themselves, and as the agents, representatives, principals, partners, associates, joint venturers, employers, employees, alter egos, and/or conspirators of each of the remaining Defendants. Plaintiffs are further informed and believe and based thereon allege that Defendants, and each of them, were at all times acting within the course, purpose and scope of said agency, partnership, association, joint venture, employment, alter ego and/or conspiracy, and Defendants, and each of them, were acting with the authorization, permissions and/or consent of the remaining Defendants

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Defendant and DOES 1 through 10, inclusive)**

8. Plaintiffs hereby incorporate by reference paragraphs 1 through 7, inclusive, of this Complaint as though set forth fully herein.

9. On or about July 30, 2019, the Parties' entered into the Note, whereby Defendant agreed to pay to Plaintiffs the principal sum of $1,000,000 no later than August 15, 2020. Defendant further agreed to pay interest on the unpaid balance of said sum at five and one-half percent (5½%) per annum, due and payable on the maturity date. A true and correct copy of the Note is attached hereto as Exhibit A.

10. Under the terms of the Note, Plaintiffs were given the option to convert all or part of the outstanding principal amount plus accrued interest into fully paid and non-assessable shares of Defendant's common stock. Plaintiffs never exercised this option.

11. The Note further provides that in the event Defendant failed to pay principal or interest when due, the entire balance of said unpaid principal and interest then accrued shall become immediately due and payable upon written demand to Defendant.

**COMPLAINT**

12. Plaintiffs performed all of the conditions, covenants, and agreements on their part to be performed in accordance with the terms of the Note, including but not limited to loaning the principal sum of $1,000,000 to Defendant. Plaintiffs have further performed all conditions precedent to enforcement of the note, or any such conditions have been waived or excused.

13. On or about August 15, 2020, Defendant breached the terms of the Note by failing to pay the entire outstanding balance of the note and accrued interest due and owing as of that date.

14. On or about November 27, 2020, Defendant paid to Plaintiffs the sum of $500,000, $72,178.08 of which was applied to the interest then due and owing on the principal amount. Defendant thereafter made two additional payments of $2,661.17 as and for a portion of the interest due and owing as of that time.

15. On or about June 2, 2021, Plaintiffs declared the entire unpaid balance of the Note, plus accrued interest, due and payable, and notified the Defendants of the same. Plaintiffs did not, and have not, exercised their conversion rights under the Note. Thereafter, on or about June 4, 2021, Defendant paid to Plaintiffs an additional sum of $10,972.98.

16. As of the date of this Complaint, Defendant has failed and/or refused to pay the full amount due and owing to Plaintiffs. Plaintiffs are informed and believe and based thereon allege that Defendant continues to refuse to make said payment(s), in breach of their obligations under the Note.

17. As a result of Defendants' breach of contract, Plaintiffs have been damages in an amount according to proof in excess of the jurisdictional minimums of the Court. Plaintiff is further entitled to a penalty equivalent to at five and one-half percent (5½%) of the principal due and owing compounded monthly.

//
//

**COMPLAINT**

## SECOND CAUSE OF ACTION

## MONEY HAD AND RECEIVED

### (Against Defendant and DOES 1 through 10, inclusive)

18. Plaintiffs hereby incorporate by reference paragraphs 1 through 17, inclusive, of this Complaint as though set forth fully herein.

19. Within the past four years, Defendant became indebted to Plaintiffs for money had and received by Defendants from the Plaintiffs.

20. There is now due and owing to Plaintiffs from the Defendants a sum in excess of $650,000. Although demand has been made by Plaintiffs for payment of the amount due from Defendant, Defendant has failed and/or refused, and continued to fail and/or refuse, to pay such sums due and owing to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully prays for judgment against Defendant in an amount according to proof, but in no event less than the jurisdictional minimum of the Court. Plaintiff further requests and award of costs and such other and further relief as the Court deems just and proper.

Dated: February 10, 2022                    DAPEER, ROSENBLIT & LITVAK, LLP


                                            By:_____/s/_____
                                               William Litvak
                                               Eric P. Markus
                                               Matthew Ames
                                               Attorneys for Plaintiffs,
                                               MORRIS FLANCBAUM and
                                               SUSAN RIZZUTO

**COMPLAINT**

# EXHIBIT A

THIS NOTE AND THE SHARES OF CAPITAL STOCK INTO WHICH IT IS CONVERTIBLE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR UNDER APPLICABLE STATE SECURITIES LAWS. THIS NOTE MAY NOT BE SOLD, OFFERED FOR SALE, TRANSFERRED OR ASSIGNED UNLESS THE TRANSACTION IS REGISTERED OR THE ISSUER RECEIVES AN OPINION OF COUNSEL SATISFACTORY TO IT THAT AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933 AND APPLICABLE STATE SECURITIES LAWS IS AVAILABLE.

## THE TYSON GROUP, INC.

## CONVERTIBLE PROMISSORY NOTE

**$1,000,000**                                                    **El Segundo, California**
                                                                                                          **July 30th, 2019**

1. <u>Payment</u>.

The Tyson Group, Inc., a California corporation (the "<u>Company</u>"), its successors and assigns, for valued received, hereby promises to pay to **Morris Flancbaum and Susan Rizzuto, JTWROS** or his, her or its registered assigns (the "<u>Holder</u>") the principal sum of one million and 00/100 Dollars ($1,000,000.00) on August 15, 2020 (the "<u>Maturity Date</u>"). The Company also promises to pay interest (computed on the basis of a 360-day year) from the date hereof on the unpaid balance of such principal amount from time to time outstanding at the simple rate of five and one-half percent (5½%) per annum. Interest shall be due and payable on the Maturity Date.

2. <u>Conversion</u>.

(a) <u>Into Stock</u>. The Holder of this Note has the right, at his, her or its option, at any time before the payment in full of the principal amount of this Note and all accrued but unpaid interest thereon, to convert all or part of the outstanding principal amount of this Note plus interest accrued to the date of conversion into fully-paid and non-assessable shares of the Company's common stock, par value $.0001 per share ("<u>Stock</u>") at the per share conversion price of two Dollars and fifty cents ($2.50) (the "<u>Preferred Conversion Price</u>").

(b) <u>Exercise of Conversion Rights</u>. In order to exercise these conversion rights, the Holder shall surrender this Note to the Company during normal business hours at the Company's principal executive office, accompanied by written notice in form satisfactory to the Company that the Holder elects to convert the principal amount of this Note plus accrued interest or a portion thereof specified in such notice. Such notice shall also state the name of the Holder (with the address) in which the certificate or certificates for shares of Stock or Common Stock issuable on such conversion shall be issued.

(c) <u>Conditions Precedent to Conversion</u>. Notwithstanding anything to the contrary in this Note, the Holder may not convert any portion of this Note into shares of capital stock unless: (i) the Holder is at the time of such conversion an "accredited investor" at the time of conversion, as that term is defined in Rule 501(a) of Regulation D promulgated under the Securities Act of 1933, as amended, and provides the Company customary representations and warranties to this effect; (ii) the Holder has become a party to the Company's Shareholder Agreement then in effect; and (iii) agrees in writing to refrain from transferring of shares of capital stock of the Company during the

DocuSign Envelope ID: DA945BA8-9882-4BA0-9418-77C1A4FC8D89

180 day period after the Company files a registration statement with the Securities and Exchange Commission.

(d) <u>Fractional Shares</u>. In the event that any portion of this Note would be converted into only a fractional share of stock in connection with such conversion, then the Company may pay to the Holder the amount representing such fractional share or, in the sole discretion of the Company, round up the fractional share to the next whole number.

(e) <u>Certain Restrictions on Conversion</u>. Notwithstanding anything herein to the contrary, Holder may not convert this Note into equity in the Company if Holder has experienced a Disqualifying Event. A "<u>Disqualifying Event</u>" means the conviction of a felony or any other criminal offense that would: disqualify Holder or the Company from obtaining a license (1) under the California Medical and Adult Use Cannabis Regulation and Safety Act and the regulations promulgated thereunder, or (2) similar laws of other states governing the licensure of or ownership in persons involved in the cannabis industry.

3. <u>Surrender of Note and Delivery of Certificates</u>. As promptly as practicable after the surrender of this Note for conversion in accordance with <u>Section 1</u> above, the Company shall deliver or cause to be delivered to the Holder a certificate or certificates for the number of shares of Stock issuable upon the conversion of this Note, or portion thereof, in accordance with the provisions hereof. Such conversion shall be deemed to have been made at the time this Note shall have been surrendered for conversion and the notice specified above shall have been received by the Company at its principal executive office (the "<u>Conversion Date</u>"), and the Holder in whose name any certificate or certificates for shares of Stock shall be issuable upon such conversion shall be deemed to have become on the Conversion Date the holder of record of the shares represented thereby. If less than the entire outstanding principal amount of this Note is being converted, the Company shall promptly deliver to the Holder a new Note for the unconverted principal balance, which Note and shall be of like tenor as to all terms as the Note surrendered.

4. <u>Prepayments</u>. The Company may prepay this Note in full upon ten (10) days' advance written notice to Holder of the Company's intent to pay the entire principal amount and all accrued interest thereon in full, during which time the Holder may exercise his, her or its conversion rights as set forth in this Note.

5. <u>Default</u>. The entire unpaid principal of this Note and the interest then accrued on this Note shall become and be immediately due and payable upon written demand to the Company by the Holder of this Note, without any other notice or demand of any kind or any presentment or protest, if any one of the following events shall occur and be continuing at the time of such demand, whether voluntarily or involuntarily, or, without limitation, occurring or brought about by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any governmental body:

(a) the Company fails to pay principal or interest under this Note when due;

(b) the Company, its subsidiaries or affiliates (i) makes a composition or an assignment for the benefit of creditors, (ii) applies for, consents to, or acquiesces in, a petition seeking the appointment of a trustee, receiver or liquidator, in bankruptcy or otherwise, of itself or of all or a substantial portion of its assets, or (iii) an order for relief shall have been entered by a bankruptcy court or if a decree, order or judgment shall have been entered adjudging the Company insolvent, or appointing a receiver, liquidator, custodian or trustee;

(c) the Company, its subsidiaries or affiliates sells all or substantially all of its assets and does not pay the outstanding principal balance of this Note and all accrued interest thereon contemporaneously with the closing of such transaction; or

(d) the Company otherwise breaches any of its obligations hereunder (other than the payment of principal or interest hereunder) and such breach continues for a period of thirty (30) days after written notice thereof.

6. <u>Unsecured</u>. This Note is unsecured.

7. <u>Waivers</u>. The Company waives presentment, demand, protest, notice of protest, notice of presentment and all other notices and demands in connection with the enforcement of the rights of the Holder of this Note. Any failure of the Holder to exercise any right available hereunder or otherwise shall not be construed as a waiver of the right to exercise the same right or any other right.

8. <u>Transfer or Exchange</u>. Subject to the provisions of the legend set forth at the top of the first page of this Note, whenever this Note shall be surrendered at the principal executive office of the Company for transfer or exchange, accompanied by a written instrument of transfer duly executed by the Holder hereof (or its duly authorized attorney in writing), the Company shall execute and deliver in exchange for this Note a new Note or Notes, as may be requested by such Holder, in the same aggregate unpaid principal amount and payable on the same date as the principal amount of the Note or Notes so surrendered; and each such new Note shall be in such principal amount and registered in such name or names as such Holder may designate in writing.

9. <u>Loss or Destruction of Note</u>. Upon receipt by the Company of evidence reasonably satisfactory to it of the loss, theft, destruction or mutilation of this Note and of indemnity reasonably satisfactory to it, and upon reimbursement to the Company of all reasonable expenses incidental thereto, and upon surrender and cancellation of this Note (in case of mutilation), the Company will make and deliver in lieu of this Note a new Note of like tenor and unpaid principal amount.

10. <u>Successors and Assigns</u>. This Note, and the obligations and rights of the Company hereunder, shall be binding upon and inure to the benefit of the Company, the Holder of this Note, and their respective successors and assigns.

11. <u>Currency</u>. All payments shall be made in the currency of the United States of America.

12. <u>Notices</u>. All notices, requests, consents and demands shall be made in writing and shall be mailed postage prepaid, or delivered by hand, to the Company or to the Holder at their respective addresses set forth below or to such other address as may be furnished in writing to the other party hereto:

If to the Holder: _____
_____
_____

If to the Company: The Tyson Group, Inc.
1209 E. El Segundo Blvd.
El Segundo, CA 90245
Email Address: rob@tysonranch.com

DocuSign Envelope ID: D1945BA8-968841BA9-8416-77C4A4EC8D80

13. <u>Governing Law</u>. This Note shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of California, without reference to California's choice of law provisions.

14. <u>Operating Company</u>. The Company represents and warrants to Holder that it is an "operating company" within the meaning of Section 22062(b)(2) of the California Financial Code in that (A) it primarily engages, wholly or substantially, directly or indirectly through a majority-owned subsidiary or subsidiaries, in the production or sale, or the research or development, of a product or service other than the investment of capital, (B) it is not an individual or sole proprietorship, (C) it is not an entity with no specific business plan or purpose and its business plan is not to engage in a merger or acquisition with an unidentified company or companies or other entity or person, and (D) it intends to use the proceeds from the sale of the Notes solely for the operation of the Company's business and uses other than personal, family, or household purposes. The Board of Directors of the Company, in the exercise of its fiduciary duties, has approved the sale of the Notes based upon a reasonable belief that the loans represented by the Notes are appropriate for the Company after reasonable inquiry concerning the Company's financing objectives and financial situation.

15. <u>Corporate Securities Law</u>. THIS NOTE AND THE SECURITIES INTO WHICH IT MAY CONVERT HAVE NOT BEEN QUALIFIED WITH THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA AND THE ISSUANCE OF SUCH SECURITIES OR THE PAYMENT OR RECEIPT OF ANY PART OF THE CONSIDERATION THEREFOR PRIOR TO SUCH QUALIFICATION IS UNLAWFUL, UNLESS THE SALE OF SECURITIES IS EXEMPT FROM QUALIFICATION BY SECTION 25100, 25102 OR 25105 OF THE CALIFORNIA CORPORATIONS CODE. THE RIGHTS OF ALL PARTIES TO THIS AGREEMENT ARE EXPRESSLY CONDITIONED UPON SUCH QUALIFICATION BEING OBTAINED, UNLESS THE SALE IS SO EXEMPT.

16. **Penalty for Overdue Payment**. In addition to the payment due as set forth herein, if the Holder has not received payment in full on or before its due date, Company will pay the Holder a penalty of 5.5% of the Principal then due and owing compounded monthly until such time as the Principal and Interest have been paid in full.

\*\*\*

Case 2:22-cv-10954-DML-JJCG ECF No. 1, PageID.61 Filed 02/10/22 Page 11 of 6
Case 2:22-cv-10954-DMG-JC Document 1 Entered on FLSD Docket 07/21/2022 Page 61 of 6

NOTE # 2019 - ___

**IN WITNESS WHEREOF,** this Convertible Note has been executed and delivered on the date first above written by the duly authorized representative of the Company.

THE TYSON GROUP, INC.

By: _____
    DocuSigned by: 42E928B827DC455...

Its: CEO
     _____

4822-3888-8605, v. 2

5